UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Lawrence Macken,<br><br>　　　　　　Defendant. | No. 2:20-cr-00023-KJM<br><br>ORDER |

Federal Rule of Criminal Procedure 23(a) permits a defendant to waive his right to a jury trial only if the government consents and the court approves. Here, the government does not consent. Defendant Lawrence Macken asks the court to schedule a bench trial nonetheless. As explained in this order, that request is **denied**.

**I.　BACKGROUND**

Mr. Macken was arrested after a traffic stop in December 2019. *See* Ezell Aff. ¶¶ 8–10, ECF No. 1. Officers found a handgun in the car. *See id.* ¶ 11. The government filed a criminal complaint in this court the next month, charging Mr. Macken with one violation of 18 U.S.C. § 922(g)(1), which prohibits people who have been convicted of a felony from possessing a firearm. *See* Crim. Compl., ECF No. 1. Mr. Macken was detained. Minutes, ECF No. 3. A grand jury returned an indictment in January 2020, and Mr. Macken pleaded not guilty. *See* Indictment, ECF No. 7; Plea Hr'g Minutes, ECF No. 9.

Soon after Mr. Macken was arraigned and entered his plea, the COVID-19 pandemic caused the Sacramento courthouse to close its doors to the public. *See, e.g.*, E.D. Cal. Gen. Orders 611, 612, 614, 617, 618, 620, 624, 628. Since then, despite massive public and private efforts to contain the virus and develop effective vaccines, cases and deaths have spiked again and again. As a result, no judge of this court has convened a jury trial, no pools of potential jurors have been assembled, and essentially all hearings and conferences have been conducted remotely by videoconference. *See, e.g.*, *United States v. Sheikh*, ___ F. Supp. 3d ___, No. 18-cr-00119, 2020 WL 5995226, *1–2 (E.D. Cal. Oct. 9, 2020).

Mr. Macken's case has moved forward despite the pandemic. His counsel reviewed the evidence, and he filed a motion to suppress, which was denied last August. *See* Minute Orders, ECF Nos. 12, 14, 16, 18; Mot. Suppress, ECF No. 20; Minutes, ECF No. 37. Mr. Macken also moved unsuccessfully for bail review before the assigned Magistrate Judge, and he has now asked this court to review the Magistrate Judge's decision. *See* Minutes, ECF Nos. 25 & 60; Mot., ECF No. 71.[1]

In a status conference in December 2020, Mr. Macken confirmed his intent to go to trial, and a trial date was set in February. *See* Minutes, ECF No. 48. But in a trial confirmation hearing in January, the court advised the parties the pandemic would prevent it from setting dates for any jury trials for several more months. *See* Minutes, ECF No. 52. Mr. Macken offered to waive his right to a jury trial to permit a bench trial, in the courthouse. *See id.* A bench trial would likely be feasible much sooner than a jury trial, so the court asked the parties to offer some details about a potential bench trial in a joint report. *See id.*

In the joint report, the government declined to consent to a bench trial under Federal Rule of Criminal Procedure 23(a). *See* Joint Report at 1–2, ECF No. 53. After speaking with the parties again, the court asked them to brief their positions on whether the case could be tried without a jury despite the government's decision not to give its consent. *See* Minutes, ECF No. 58. The court took the matter under submission after receiving the parties' briefs and

---

[1] The court heard the motion to revoke detention on February 22, 2021 and then submitted it.

2

speaking with them at a further hearing.  *See* Minutes, ECF No. 74; Def. Br., ECF No. 65; Gov't Br., ECF No. 70.

**II.     DISCUSSION**

The Constitution guarantees criminal defendants the right to a speedy and public jury trial. *See* U.S. Const. Art. III, § 2 & Sixth Am.  Jury trials are the "normal" and "preferable" method to resolve factual disputes in "criminal cases above the grade of petty offenses." *Patton v. United States*, 281 U.S. 276, 312 (1930).  The Supreme Court has held, however, that a twelve-person jury is not essential in every criminal trial.  It has long permitted defendants to waive their right to jury trials if they do so expressly and intelligently and if the government consents and the court approves. *See id.*  Today that rule is codified in Rule 23: "If the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves."  Fed. R. Crim. P. 23(a); *see also United States v. U.S. Dist. Ct. for E. Dist. of Cal.*, 464 F.3d 1065, 1069 (9th Cir. 2006).

In effect, Rule 23 grants the government a veto of a defendant's proposal to conduct a bench trial.  In 1965, the Supreme Court considered whether that veto was constitutional in *Singer v. United States*, 380 U.S. 24 (1965).  In *Singer*, on the first day of trial, the defendant offered to waive his right to a jury "for the purpose of shortening the trial." *Id.* at 25 (alterations omitted). The district court was willing to approve, but the government did not consent. *Id.*  The defendant was then tried and convicted by a jury. *Id.*  He appealed, the Ninth Circuit affirmed, and the Supreme Court granted certiorari to decide whether the Constitution gives criminal defendants the right to try their cases to the court over the government's opposition. *See id.*  The Court held unanimously that defendants have no constitutional right to a trial without a jury if the government does not consent. *See id.* at 36.  The Court also emphasized that because of its "confidence in the integrity of the federal prosecutor," the government need not explain its reasons for demanding a jury trial. *Id.* at 37.

In the last few sentences of the Court's analysis, however, it left open a potential exception to Rule 23(a).  Perhaps in some cases, the Court theorized, a defendant might have such "compelling" reasons to request a trial without a jury that the government should not be permitted

3

to stand in the way of that request. *See id.* at 37–38. The Court quoted the defendant's suggestion that "'passion, prejudice, public feeling' or some other factor might render impossible or unlikely an impartial trial by jury." *Id.* (citation and alterations omitted). But the question went unanswered. The defendant in *Singer* wanted only to "save time," and that was not enough. *See id.* at 38. Nor did the Court suggest that a defendant's Sixth Amendment right to a "speedy" trial might justify an exception to Rule 23(a); it spoke only in terms of partiality and fairness. *See id.* at 37–38.

The Supreme Court has not revisited the possibility of an exception to Rule 23(a). When it has cited *Singer,* it has given no reason to believe that Rule 23(a) permits any exception at all. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 383 n.18 (1982) ("[A] criminal defendant does not have a constitutional right to waive a jury trial and to have his case tried before a judge alone." (citing *Singer*, 380 U.S. at 35)); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979) ("[B]ecause of the great public interest in jury trials as the preferred mode of fact-finding in criminal cases, a defendant cannot waive a jury trial without the consent of the prosecutor and judge."); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 574 n.13 (1977) (noting that a jury trial is waivable "with the consent of the Government" under Rule 23(a) and *Singer*); *Serfass v. United States*, 420 U.S. 377, 389 (1975) ("[A] jury trial [cannot] be waived . . . without the consent of the Government and of the court" under *Singer*); *see also, e.g., Old Chief v. United States*, 519 U.S. 172, 200 (1997) (O'Connor, J., dissenting) ("Federal Rule of Criminal Procedure 23(a) does not permit a defendant to waive a jury trial unless the Government consents, and we have upheld the provision as constitutional.").

Nor has any federal court of appeals permitted any criminal bench trials over the government's objection. *See E. Dist. of Cal.*, 464 F.3d at 1070–71 (collecting authority).[2] The Ninth Circuit has considered the question twice, and in neither case did it recognize an exception

---

[2] According to the district court's order in *United States v. Lewis*, 644 F. Supp. 1391, 1395 (W.D. Mich. 1986), the Sixth Circuit once upheld an order granting a defendant's request for a bench trial despite the government's decision not to consent, *see* 638 F. Supp. 573, but records of the Sixth Circuit's decision evidently are not available, *see United States v. Caramadre*, 11-186, 2012 WL 4762189, at *2 n.1 (D.R.I. Oct. 5, 2012).

to Rule 23(a).  *See id.* at 1071; *United States v. Reyes*, 8 F.3d 1379, 1389–90 (9th Cir. 1993).  As has the Supreme Court, the Ninth Circuit has occasionally described *Singer* as permitting no exceptions at all.  *See United States v. Gray*, 448 F.2d 164, 168 (9th Cir. 1971) ("[T]he government, as well as the defendant, has the right to insist upon a jury determination of those facts.").  The Circuit's decisions instead suggest that the dangers mentioned in *Singer*—passion, prejudice, and public feeling—can be mitigated by thorough voir dire, careful limiting instructions, vigorous evidentiary objections, and other tools often used in federal district courts.  *See E. Dist. Cal.*, 464 F.3d at 1071–72; *Reyes*, 8 F.3d at 1390.

A handful of federal district courts have allowed defendants to try their cases to a judge alone without the government's consent.  It has happened only five times since 1965, as reviewed below.

The impossibility of a fair jury trial is the most commonly cited "compelling" reason in these decisions.  In the first post-*Singer* case, the defendant's "entire way of life" so "reek[ed] with the odor of organized crime" that the district court believed it would be impossible for a jury to consider the evidence impartially.  *See United States v. Schipani*, 44 F.R.D. 461, 463 (E.D.N.Y. 1968).  In the next two cases, there were so many charges, defendants, witnesses, and exhibits that the court found in each case it would have been impossible for any jury to fairly evaluate the evidence.  *See United States v. Braunstein*, 474 F. Supp. 1, 13–14 (D.N.J. 1978); *United States v. Panteleakis*, 422 F. Supp. 247, 250 (D.R.I. 1976).

Conflicting constitutional rights are the next most common reason district courts have decided to override the government's decision not to consent.  Rounding out the five cases, there are two cases in this category.  In the first case, the defendants' sincerely held religious beliefs forbade them from submitting to the judgment of lay jurors.  *See United States v. Lewis*, 638 F. Sup. 573, 575 (W.D. Mich. 1986).  They believed that only judges were ordained of God to resolve disputes and pass judgments.  *See id.*  The government's refusal to consent to a bench trial thus set up a conflict between two cherished constitutional rights: the right to freely exercise one's religious beliefs and the right to a fair jury trial.  *See id.* at 578.  The district court held that forcing a jury trial on these defendants would be unfair and unconstitutional.  *See id.* at 581.

The second case of conflicting constitutional rights, and the last of the five, was decided only a few months ago. *See United States v. Cohn*, 481 F. Supp. 3d 122 (E.D.N.Y. 2020). The defendant, whose age and health conditions made him especially susceptible to complications of COVID-19, could not safely testify on his own behalf without a mask, but in the district court's judgment, "proper cross-examination" would be impossible with masks. *See id.* at *131–32. As a result, "the pandemic effectively pit [the] defendant's right to a jury trial against his right to testify at that trial." *Id.* at 132. The case was also abnormally complex, the public had an unusually strong interest in a swift resolution, and the government's case was likely to "expose a jury to inadmissible and confusing evidence." *Id.* at 132–33. Together, these factors supported the defendant's request for a bench trial, which the court granted despite the government's objection. *See id.* at 135.

Mr. Macken has advanced no similarly compelling interest. This is not a complicated case. He is the only defendant, there is only one charge, only a few witnesses—ten at most—would testify at trial, and a trial would likely last only a few days. This is not a case of unusual public interest or concern, and Mr. Macken does not argue his criminal history or the evidence risks prejudicing a jury unfairly against him. *See* Def. Br. at 9. He does not question the government's motives in declining to consent to a bench trial. *See id.* at 5. The only possibility of partiality he raises is hypothetical. He suggests it may be impossible to assemble a jury that represents a fair cross section of the community during the pandemic. *See id.* at 9 & n.2. The pandemic has no doubt imposed greater burdens on some than others, and it has likely exacerbated many inequalities. But no evidence shows that assembling a jury of Mr. Macken's peers will prove impossible, and with time, the pandemic will present much less danger to potential jurors.

It seems clear that time, not juror partiality, is Mr. Macken's true focus. His primary arguments rest on the long delays the COVID-19 pandemic has forced upon this District and the Sacramento courthouse. As noted above, jury trials in Sacramento will be either unsafe or impracticable for several months yet. These delays, he argues, deprive him of his constitutional

/////

6

right to a "speedy" trial, and he argues that delays withhold a speedy resolution of his case from the community at large. *See* Def. Br. at 5–8.

No court has granted a defendant's request to waive his right to a jury trial over the government's objection when that request rested on the right to a speedy trial. As summarized above, the Supreme Court all but shut the door on that argument in *Singer*. The defendant's desire to save time in that case was no reason to override the government's decision. *See* 380 U.S. at 37. In *Cohn*, the district court believed this to be an absolute and settled rule: "It is well established," the court wrote, "that a defendant's desire for a speedy trial, standing alone, cannot provide a basis for overruling a Government objection under Rule 23(a)." 481 F. Supp. 3d at 131.

Although district courts have sometimes cited delays when they have permitted criminal defendants to waive their right to a jury trial over government objection, that is not because the delay deprives the defendant of a personal right. In only two cases has a delay supported a decision to override the government's decision not to consent. First, in *Braunstein*, the interest in speed belonged to "the judicial system as a whole." 474 F. Supp. at 14. The case was so complicated that trying it to a jury would have deprived many other defendants of their right to a speedy trial. *See id.* Second, in *Cohn*, the delay harmed "the public's right to speedy trial." 481 F. Supp. 3d at 133. That case had garnered unusual public attention. Major national newspapers and trade publications were following the case closely given the charges, i.e., "that a government official recruited by a firm under investigation by the SEC to work as its compliance officer illegally acquired and transmitted sensitive investigative information to that firm." *Id.*

The court also hesitates to read exceptions into the unambiguous terms of Rule 23(a). Rule 23, like other federal procedural rules, is the result of "an extensive deliberative process involving . . . a Rules Advisory Committee, public commenters, the Judicial Conference, [the Supreme] Court, [and] Congress." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (referring to the Federal Rules of Civil Procedure); *see also* 28 U.S.C. §§ 331, 2071–2077 (governing the adoption and amendment of the federal rules of civil and criminal procedure, among others). The Supreme Court has thus warned against "judicial inventiveness" when it

comes to federal procedural rules. *Amchem*, 521 U.S. at 620. It has cautioned lower courts not to "amend a rule outside the process Congress ordered." *Id.* The Rules Committee and Congress could have adopted an exception, but they did not. *See Singer*, 380 U.S. at 37.

At the same time, criminal defendants are not powerless against delays. The Speedy Trial Act was enacted to ensure prompt justice. *United States v. Pollock*, 726 F.2d 1456, 1459–60 (9th Cir. 1984). It implements the Sixth Amendment right to a "speedy trial." *See Furlow v. United States*, 644 F.2d 764, 768–69 (9th Cir. 1981) (per curiam). "Congress was concerned about a number of problems—such as disruption of family life, loss of employment, anxiety, suspicion, and public obloquy—that vex an individual who is forced to await trial for long periods of time." *Pollock*, 726 F.2d at 1460. The Speedy Trial Act thus imposes strict time limits on criminal prosecutions. No more than 70 days can elapse between arraignment and trial, for example. *See* 18 U.S.C. § 3161(c). District courts can pause that clock, but only for a specific set of reasons. *See id.* § 3161(h). If a trial is impossible and time cannot be excluded, Mr. Macken has the option of moving for dismissal of the charge against him. *See Sheikh*, 2020 WL 5995226 at *2–5 (granting dismissal without prejudice because the COVID-19 pandemic prevented a speedy trial and time could not be excluded under 18 U.S.C. § 3161(h)(7)(A), the "ends of justice" exclusion).

Mr. Macken's detention magnifies the harm of the delay he has suffered. A viral pandemic—one that has spread through county jails and federal prisons alike—also puts him and his fellow inmates at great risk of serious harm. But a Rule 23(a) exception is not the solution. Criminal defendants may also move for release pending trial, as Mr. Macken has already done. *See* ECF No. 71.

**III.   CONCLUSION**

Mr. Macken's request to set a bench trial is **denied**.

IT IS SO ORDERED.

DATED: February 23, 2021.

CHIEF UNITED STATES DISTRICT JUDGE